Receipt number CUSFCC-9216693

# In the United States Court of Federal Claims

**BID PROTEST**

(Filed: December 13, 2023)

<span style="color:red">**Redacted Version**</span>

|  |  |
|---|---|
| LIFE SCIENCE LOGISTICS, LLC, | ) |
| | ) |
| *Plaintiff,* | ) Case No. _____23-2116 C_____ |
| | ) |
| v. | ) Judge _____ |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Life Science Logistics, LLC ("LSL" or "Plaintiff"), by and through counsel, seeks declaratory and injunctive relief to prohibit the United States General Services Administration ("GSA"), Federal Systems Integration and Management Center ("FEDSIM"), from unlawfully proceeding with the performance of an improper contract in the amount of $237,823,262 awarded to Integrated Quality Solutions, LLC ("IQS") under Solicitation No. 47QFCA22R0020 (the "Solicitation" or "RFP").

LSL filed a protest at the United States Government Accountability Office ("GAO") on November 20, 2023 challenging GSA's award decision and GAO notified GSA of the protest that same day, thereby triggering the automatic stay of performance under the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553(d). This is LSL's third GAO protest of GSA's award decisions under this procurement, with the first protest having been resolved by GSA taking voluntary corrective action on September 13, 2022, and the second being sustained by a GAO decision on April 19, 2023. GSA informed LSL on December 7, 2023 that GSA authorized IQS

1

to begin performance under the contract during the pendency of the GAO protest, notwithstanding the mandatory CICA stay of performance, citing the best interests of the Government and alleged urgent and compelling circumstances. Because GSA's decision to override the CICA stay was arbitrary, capricious, and contrary to law, this Court should declare that GSA's decision is invalid and has no effect and enjoin and restrain GSA from proceeding with performance.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this civil action for declaratory and injunctive relief, and venue lies in this Court, pursuant to the Tucker Act, as amended, 28 U.S.C. § 1491(b)(1), which grants this Court original jurisdiction to hear "an action by an interested party objecting to … any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." Challenges to alleged violations of the CICA automatic stay provision are within this jurisdiction. *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999).

## PARTIES

2.     Plaintiff LSL is a Texas-based limited liability company organized under the laws of the State of Florida with its principal place of business at 3100 Olympus Blvd., Suite 100, Coppell, TX 75019. LSL is an "interested party" within the meaning of 28 U.S.C. § 1491(b), as it is an actual offeror under the RFP whose direct economic interest has been affected by the procurement errors complained of herein. Specifically, LSL suffered non-trivial competitive injury from the Government's improper contract award and its decision to override the stay of performance of that contract required by CICA. But for the Government's wrongful actions, LSL would have a substantial chance of receiving a contract award. Accordingly, LSL is an interested party to this protest.

2

3. Defendant is the United States, acting by and through GSA FEDSIM, 1800 F St. NW, Washington, DC 20405.

## FACTUAL BACKGROUND

### A. The Incumbent Contract

4. LSL is the incumbent contractor for the current Strategic National Stockpile ("SNS") site for the National Capital Region ("NCR"), serving as a Managed Service Provider responsible for safely and securely receiving, storing, weighing, staging, and shipping pallets of pharmaceuticals, medical supplies, medical equipment, and emergency supplies ("product") for use in a public health emergency.

5. The incumbent contract requires LSL to manage and maintain ▉ pallet positions of product. This includes ambient pallets and temperature controlled pallets ("cold-chain"), along with Ultra-Low Temperature ("ULT") reach-in freezers.

6. LSL successfully performed this 10-year contract through the most significant pandemic in recent history, hurricanes, infectious disease outbreaks, and other public emergencies, including Afghanistan Repatriation, Unaccompanied Children, Hurricane Ida, Haiti Refugees, N95 Mask Push, and other contingency operations. Ex. 3. ▉▉▉▉▉▉▉

7. In every CPARS evaluation throughout the 10-year performance period, ▉▉▉ *See* Ex. 3.

8. LSL's incumbent contract expired in July 2021. At this time, GSA had not awarded a follow-on contract to support the NCR.

9. On August 30, 2021, GSA issued LSL bridge contract 47QFCA21C0020 (the "Bridge Contract") to continue providing the same services, in the same facility. The Bridge

3

Contract currently expires on December 25, 2023, but has an unexercised option that can extend performance to at least January 25, 2024.

10.     Shortly after the execution of the Bridge Contract, SNS wrote to LSL:

> I would like to thank the larger team, not only for [SURGE activities the weekend of August 20, 2021], but for their professionalism and attention to details over the last 18 months responding to real-world events, such as COVID-19, Hurricanes, Afghanistan Intake Mission, the United Nations General Assembly Mission, etc. As you're aware, this type of performance is a true reflection of leadership, detailed training, and personal accountability.

Ex. 4.

11.     LSL is presently performing under the Bridge Contract at the facility that SNS has used for the past 12 years.  In all CPARS evaluations for the Bridge Contract, ██████████████

██████████████████████████.  Ex. 3 at 1–9.

### B. Solicitation

12.     GSA issued Solicitation No. 47QFCA22R0020 for the follow-on contract on May 19, 2022, nearly one year after LSL was awarded the Bridge Contract.  Ex. 5.

13.     The Solicitation calls for the same managed services as the incumbent contract but a ███████ inventory requirement of █████ pallet positions.  The Solicitation also includes a requirement that ████ of the █████ pallet positions be designated for cold-chain storage, along with ULT reach-in and walk-in freezers.  *Id.* at 14.

14.     The Solicitation acknowledges that any proposed site will require "conditioning," which is the process of renovating (or building) the proposed warehouse to meet SNS's needs, including obtaining necessary permits, building walls, and procuring and installing pallet "racks," adequate electricity equipment, security equipment, cold-chain freezers, and so on. *See* Ex. 5 at 17–18, 20, 27, 127; *see also* Ex. 2 at 18–20.  The Conditioning Phase must be completed before product can be moved into the facility.  *See* Ex. 5 at 18 ("In accordance with the

4

Conditioning Phase, for which acceptance has been authorized, the contractor shall execute the Product Movement phase of the Transition-In Plan NLT one calendar day after facility acceptance…."); Ex. 2 at 20 ("Upon receipt of conditioning acceptance by the Government, the contractor shall commence Product Movement phase of the Transition-In Plan NLT the next calendar day"). The RFP establishes the following timeline for the Conditioning Phase:

> The Conditioning Phase shall not exceed 180 days; 120 days is preferred for ambient storage. The Government is willing to consider Transition-In Plans that require extended timelines (greater than 180 days) for complexities such as new building construction, build out of walk-in chambers, and parallel conditioning if a second site is proposed.

Ex. 5 at 127; *see also* Ex. 2 at 20.

15. Only two offerors submitted proposals in response to the Solicitation: LSL and IQS. Ex. 6 at 3.

### C. First Award Decision and Protest

16. On August 16, 2022, GSA announced IQS as the awardee at a contract price of nearly $██████ more than what LSL had proposed. Ex. 6 at 3.

17. In LSL's evaluation, GSA assigned ███████████████████████████████████████████████████████████████████████████████████████████ *Id.* at 4–5.

18. LSL timely filed a post-award protest at GAO on August 30, 2022, triggering an automatic CICA stay. Ex. 7. Among other challenges, LSL noted that ████████████████████████████████████████████████████████████████████████████████████ *Id.* at 23–24; *see also* Ex. 5 at 28. Specifically, ████████████████

5

████████████████████████████████████████████████

████. Ex. 7 at 23–24. Furthermore, LSL protested that ████████████████

████████████████████████████████████████████████

████████████████████████████. *Id.* at 28–33.

19. On September 13, 2022, GSA filed a notice of corrective action, advising that it would "amend the solicitation to account for the issues identified in the areas of ████████ ███████████ request new proposals, conduct new evaluations and make an award." Ex. 8.

20. Thereafter, GSA terminated the award to IQS, issued an amended solicitation that ████████████████████████████ requested new proposals, and conducted another evaluation of IQS and LSL. *See* Ex. 2.

**D. Second Award Decision and Protest**

21. On December 22, 2022, GSA announced that it had again awarded the contract to IQS and that LSL's proposal had been downgraded from "Good" to "Not Acceptable" following LSL's first protest. Ex. 9 at 3–4.

22. On January 10, 2023 LSL timely filed a second protest at GAO, again triggering an automatic CICA stay. Ex. 10 at 1. Among other challenges, LSL protested that GSA had inexplicably removed all five technical strengths that were assigned in the first evaluation, despite no intervening changes to GSA's requirements. *See id.* at 14–15. In addition, GSA assigned LSL multiple weaknesses and significant weaknesses, without raising those concerns during discussions, based on features of LSL's proposal that were unchanged between the original and post-corrective action submissions. *Id.* at 39–40.

6

23.     On April 19, 2023, GAO sustained LSL's protest on grounds that GSA failed to conduct meaningful discussion as part of its previous corrective action by not disclosing alleged flaws in LSL's materially unchanged proposal that were first identified during GSA's reevaluation. *See Life Science Logistics, LLC*, B-421018.2, B-421018.3, Apr. 19, 2023, 2023 WL 3226204, 2023 CPD ¶ 103. GAO recommended that GSA "reopen the procurement and conduct appropriate and meaningful discussions with LSL and IQS, request and evaluate revised proposals, and make a new source selection decision." *Id.* at 8. GAO also recommended that LSL be reimbursed for its costs of filing and pursuing the protest. *Id.*

### E. GSA's Actions After Sustained Protest

24.     On May 11, 2023, GSA notified LSL and IQS that it was requesting updated transition-in plans and master schedules (Gantt charts), would be conducting new site visits, would enter into discussions with offerors, and would be requesting final revised proposals. Ex. 11. GSA subsequently advised that site visits would occur either the week of June 26, 2023 or the week of July 10, 2023, that updated transition-in plans and schedules were due August 15, 2023, and that discussions and submission of final revised proposals would occur at some point after August 15, 2023. *See* Ex. 12 at 1–3.

25.     Also on May 11, 2023, the same day that the corrective action notice was issued, GSA began moving product out of the incumbent NCR site. *See* Ex. 13 at 1, ¶ 7.

26.     GSA began moving product out of the incumbent site several months before final revised proposals for the follow-on site were anticipated to be due. *Compare* Ex. 13 at 1, ¶ 7 *with* Ex. 11 at 1–2.

27.     On June 20, 2023, LSL approached SNS and extended an offer for LSL to extend the Bridge Contract past January 25, 2024. Ex. 13, ¶ 8. SNS declined the offer. *Id.*

28. Thereafter, GSA conducted discussions with LSL and IQS, and requested revised proposals that were due July 28, 2023. *See* Ex. 14.

29. On July 18 and July 25, 2023, LSL submitted questions to GSA regarding LSL's discussions questions, and expressed concerns that several of GSA's discussions questions appeared to be relying on unstated evaluation criteria, indicated changed requirements, ignored information in LSL's updated proposal from June 14, 2023, or were otherwise improper. *See* Exs. 15, 16.

30. Despite requesting revised proposals, GSA did not terminate IQS's award. *See* Ex. 17.

31. On September 27, 2023, LSL again offered SNS the opportunity to extend the Bridge Contract past January 25, 2024, and expressly offered to do everything possible to help SNS avoid interruption in service. Ex. 13 at 2, ¶ 8. SNS declined LSL's offer. *Id.*

32. GSA continued to move product out of the incumbent NCR site during this time. *See* Ex. 13 at 1, ¶ 7; Ex. 1 at 8.

33. On October 30, 2023, GSA announced that it had selected IQS for award for the third time. Ex. 18 at 3.

34. Following the close of the debriefing period, LSL submitted a timely protest to GAO on November 20, 2023, triggering the automatic CICA stay. Ex. 19.

35. Two weeks after LSL's protest was filed, on December 7, 2023, GSA notified GAO that it intended to override the CICA stay based on "urgent and compelling" circumstances and the best interests of the Government. Ex. 1.

36. GSA's Determination and Findings ("D&F") for the CICA stay override states that it was prepared and controlled by the contracting officer. *Id.* at 1, 11.

37. The D&F does not mention that GSA had been moving product out of the incumbent NCR site since May 11, 2023, and that there is currently no product in the NCR. *See generally id.*

38. The D&F does not address that product will need to be shipped or flown in regardless of the stay because GSA already moved nearly all of the product out of the region. *See generally id.*

39. The D&F states that "[a]llowing IQS to begin performance of the contract is in the best interests of the United States because it avoids an impending interruption in coverage that would degrade the nation's health security readiness posture in the region, in contravention of the SNS' mission." *Id.* at 5.

40. The D&F also asserts "urgent and compelling circumstances now exist that significantly affect the interests of the United States and do not permit waiting for the GAO decision in the protest." *Id.*

41. The D&F states that "[s]ignificant adverse consequences to the United States will occur if the stay is not overridden" because "GAO's decision in the current protest is not due until February 28, 2023, resulting, at a minimum, in nearly five weeks without coverage" and supplies will need to be shipped in from other sites should an emergency occur. *Id.* at 6.

42. The D&F does not mention that the conditioning period for the new site is 180 days—longer than the 100-day timeline for a GAO decision. *See generally id.*

43. The D&F further claims there is no reasonable alternative to overriding the stay because the incumbent site, which has served the NCR successfully for the past 12 years through COVID-19 and numerous other events, is ███████████████ than the proposed new facility. *Id.* at 7. It also states that the SNS's new requirement calls for

9

██████████████████████████████████████████████████. *Id.* at 7–8. GSA claims the incumbent site cannot be used during the pendency of LSL's protest for these reasons.

44.    The D&F also claims that the CICA stay would require that supplies be shipped or flown from other sites during the pendency of the protest and that "overriding the stay will allow the program to minimize the number of times the inventory must be moved." *Id.* at 8.

45.    The D&F further claims that bringing a different facility online within a reasonable time is not feasible because of SNS's requirements and the typical conditioning timeline that can take up to 180 days. *See id.* at 9.

46.    The D&F argues that the potential costs of the override are outweighed by the benefits based on estimated IQS's termination costs and the legal fees from LSL's sustained GAO protest. *Id.* at 9–10.

47.    Finally, the D&F claims that the override "will promote the integrity of the procurement system" because LSL is a large business and IQS is a small business. *Id.* at 10–11.

**CLAIM FOR RELIEF**

**COUNT I**
**Violation of the Administrative Procedure Act, 5 U.S.C. § 706**

48.    Plaintiff realleges and reincorporates by reference the allegations of Paragraphs 1–47, as if stated fully herein.

49.    GSA's decision to override the automatic CICA stay was arbitrary, capricious, and contrary to applicable law.

50.    In overriding the automatic CICA stay, GSA entirely failed to consider important aspects of the stay override analysis.

51.    The explanations GSA offered for the stay override run counter to the evidence before the agency.

10

52. Significant adverse consequences will not occur if the stay is not overridden.

53. Reasonable alternatives to the override exist that would adequately address the circumstances presented to GSA.

54. The potential cost of proceeding with the override, including the costs associated with the potential that GAO might sustain the protest, are greater than any benefits associated with the override.

55. The override negatively affects competition and the integrity of the procurement system, as reflected in the Competition in Contracting Act.

56. LSL has been and will be directly harmed by GSA's improper and unlawful actions.

57. So long as the stay remains overridden, IQS will enjoy an unearned competitive advantage by getting a head start on the four to six month conditioning phase through entering into a long-term lease and ordering long-lead-time items. Ex. 13 at 4, ¶ 16.

58.

59. Further, by IQS entering into a long-term lease and ordering long-lead items, a termination of IQS' improper contract resulting from GAO sustaining LSL's third protest will have the effect of GSA subsidizing IQS for the lease and long-lead-time items. *Id.* at 4, ¶ 17. This will further irreparably harm LSL because it diminishes LSL's ▆▆▆▆▆ price advantage. *Id.*

60. LSL will also be irreparably harmed by losing valuable business managing the SNS for the NCR.

11

61. Furthermore, LSL will be irreparably harmed by the loss of a valuable procedural right that will be extinguished once GAO issues its final decision. CICA grants LSL the right to an automatic stay absent extraordinary circumstances not present here. Depriving LSL of this statutory entitlement would be irreparable harm, because "[o]nce the statutory entitlement has been lost, it cannot be recaptured." *Sandoz, Inc. v. Food & Drug Admin.*, 439 F. Supp. 2d 26, 32 (D.D.C. 2006), aff'd, 2006 WL 2591087 (D.C. Cir. Aug. 30, 2006).

62. On the other hand, neither GSA nor IQS will suffer comparable harm.

63. GSA has already moved product out of the incumbent site, meaning any degradation of security and readiness is self-inflicted and should not be considered. *See Reilly's Wholesale Produce*, 73 Fed. Cl. at 715 (recognizing balance of hardships weighs in favor of plaintiff where, among other reasons, government created any delay resulting from injunctive relief); *see also Sheridan Corp. v. United States*, 95 Fed. Cl. 141, 154 (2010) (same). As the lack of SNS product in the NCR is the status quo, the delay in standing up a new site while LSL's protest is resolved will not result in further harm; rather, it would deepen that supposed harm by shutting out the one contractor presently capable of servicing the NCR.

64. IQS will further not suffer any harm as a "beneficiary of a CICA violation … suffers no harm when the violation is corrected." *Cardinal Maint. Serv., Inc. v. United States*, 63 Fed. Cl. 98, 111 (2004). And even if the protest is overruled and IQS is ultimately awarded the contract, the only disadvantage IQS will suffer is the short delay that CICA expressly and presumptively deems a worthwhile trade-off for a robust and fair procurement process. While GSA claims ███████████████████████████████████████ ██████ this is not supported by any declaration or affidavit. *See* Ex. 1 at 10–11.

12

65. Injunctive relief is also in the public interest because affording such relief will preserve the integrity of the procurement system and GAO's review process. It is well settled that "[t]he public interest is served by ensuring that governmental bodies comply with the law." *Am. Signature, v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010). Specifically in the context of government contracting, "Congress has determined that the public interest is served by the imposition of an automatic stay to allow the GAO an opportunity to ascertain the merits of a bid protest." *URS Federal Servs., Inc. v. United States*, 102 Fed. Cl. 674, 677 (2012).

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF LSL requests that this Court enter judgment in Plaintiff's favor and against the Government as follows:

i. A declaratory judgment that GSA's override decision is invalid and has no effect;

ii. A temporary restraining order and preliminary injunction enjoining performance of the contract awarded to IQS under Solicitation No. 47QFCA22R0020 until the GAO issues a ruling on LSL's GAO protest;

iii. A permanent injunction enjoining performance of the contract awarded to IQS under Solicitation No. 47QFCA22R0020 until the GAO issues a ruling on LSL's GAO protest;

iv. An Order awarding Plaintiff its reasonable attorneys' fees and costs; and

v. Such further relief as the Court deems appropriate, fair, and just.

Respectfully submitted,

Dated: December 13, 2023

_Jennifer S. Zucker_

Jennifer S. Zucker
Counsel of Record
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Tel: (202) 331-3114
Fax: (202) 331-3101
zuckerjs@gtlaw.com
*Counsel for Plaintiff*


*Of Counsel*:

Christopher M. O'Brien
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Tel: (202) 533-2306
Fax: (202) 331-3101
obriencm@gtlaw.com


Eleanor Ross
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Tel: (202) 530-8565
Fax: (202) 331-3101
Eleanor.ross@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2023 the foregoing Complaint was filed electronically via the CM/ECF system and thereby served upon all parties. Email copies were also provided to the following parties:

Kelly Geddes
U.S. Department of Justice – Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel.: (202) 451-7664
Email: Kelly.Geddes2@usdoj.gov


Marie Cochran
General Services Administration
1800 F St NW
Washington, DC 20004
Tel.: (202) 465-6139
Email: marie.cochran@gsa.gov


Dated: December 13, 2023


Jennifer S. Zucker
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Tel: (202) 331-3114
Fax: (202) 331-3101
zuckerjs@gtlaw.com
*Counsel for Plaintiff*