# In the United States Court of Federal Claims

**BID PROTEST**

(Filed: December 20, 2023)

**Redacted Version**

|  |  |  |
|---|---|---|
| **LIFE SCIENCE LOGISTICS, LLC,** | ) | |
| | ) | Case No. 23-2116 |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Judge Zachary N. Somers |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER, DECLARATORY JUDGMENT, AND PRELIMINARY INJUNCTION

William R. Levi
Daniel J. Hay
Lucas W.E. Croslow
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8000
Fax: (202) 736-8711
william.levi@sidley.com

Jennifer S. Zucker
 *Counsel of Record*
Christopher M. O'Brien
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Tel: (202) 331-3114
Fax: (202) 331-3101
zuckerjs@gtlaw.com

*Counsel for Plaintiff Life Science Logistics, LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I.      The Proper Remedy Is A Declaratory Judgment. ..................................................... 2

    II.     The Stay Override Was Arbitrary And Capricious. ................................................... 5

           A.     The Court Should Apply the *Reilly's Wholesale* Factors, Just as GSA Did in the First Instance, and Find GSA's Decision Arbitrary and Capricious. ................................................................................................. 5

           B.     The Override Decision Is Arbitrary and Capricious Under APA Case Law Too. .................................................................................................... 6

CONCLUSION ....................................................................................................................... 9

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Sys. Dev., Inc. v. United States,*
    72 Fed. Cl. 25 (2006) ........................................................................................5, 11

*AT&T Corp. v. United States,*
    133 Fed. Cl. 550 (2017) ...........................................................................................5

*Automation Techs., Inc. v. United States,*
    72 Fed. Cl. 723 (2006) .............................................................................................5

*BAE Sys. Norfolk Ship Repair, Inc. v. United States,*
    163 Fed. Cl. 217 (2022) .........................................................................................10

*Chapman L. Firm Co. v. United States,*
    65 Fed. Cl. 422 (2005) .........................................................................................5, 6

*Chen v. GAO,*
    821 F.2d 732 (D.C. Cir. 1987) .................................................................................9

*CIGNA Gov't Servs., LLC v. United States,*
    70 Fed. Cl. 100 (2006) .............................................................................................5

*CW Gov't Travel, Inc. v. United States,*
    154 Fed. Cl. 721 (2021) .........................................................................................10

*E-Mgmt. Consultants, Inc. v. United States,*
    84 Fed. Cl. 1 (2008) .................................................................................................5

*Intelligent Waves, LLC v. United States,*
    137 Fed. Cl. 623 (2018) ...................................................................................5, 8, 9

*Maden Tech Consulting Inc. v. United States,*
    74 Fed. Cl. 786 (2006) .............................................................................................5

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.,*
    463 U.S. 29 (1983) ...............................................................................................9, 12

*Nortel Gov't Sols., Inc. v. United States,*
    84 Fed. Cl. 243 (2008) .............................................................................................5

*Perez v. Ledesma,*
    401 U.S. 82 (1971) ...................................................................................................6

*PGBA, LLC v. United States,*
389 F.2d 1219 (Fed. Cir. 2004)..................................................................................7

*PMTech, Inc. v. United States,*
95 Fed. Cl. 330 (2010) ...................................................................................5, 7, 11

*Reilly's Wholesale Produce v. United States,*
75 Fed. Cl. 705 (2006) ........................................................................................8, 11

*Steffel v. Thompson,*
415 U.S. 452 (1974)...................................................................................................7

*Superior Helicopters v. United States,*
78 Fed. Cl. 181 (2007) ..........................................................................................6, 7

*Supreme Foodservice GmbH v. United States,*
109 Fed. Cl. 369 (2013) .........................................................................5, 6, 11, 12

*Technica LLC v. United States,*
142 Fed. Cl. 149 (2019) .......................................................................................5, 8

*URS Fed. Servs., Inc. v. United States,*
102 Fed. Cl. 664.......................................................................................................10

*URS Fed. Servs., Inc. v. United States,*
102 Fed. Cl. 674 (2012) .............................................................................................5

**Statutes**

28 U.S.C. § 1491........................................................................................................6

31 U.S.C. § 3553.....................................................................................................5, 7

███████████████████████████████████

**INTRODUCTION**

GSA's Opposition Brief ("Opp.") confirms that its decision to override the stay of performance pending resolution of LSL's[1] third protest was arbitrary and capricious. Rather than show that the override was the product of reasoned agency decisionmaking, taking into account all options and appropriately weighing all costs to its chosen course of action, GSA's opposition brief continues to ignore material factors, relies on and introduces factors that should not have been considered at all, and asks the Court to bless a conclusion that has no basis in the record of this case. While LSL does not endeavor to address each factual misstatement or over-simplification in the opposition Brief, we respectfully submit this brief reply to address three fundamental legal errors in GSA's argument.

*First*, this motion is correctly decided under the declaratory judgment framework, as the vast majority of CICA stay override decisions have done over the past two decades. Disagreeing with this well-settled approach, GSA asks the Court to fashion a new remedy of "declaratory relief under injunctive relief standards." Opp. 27. GSA's proposal has no basis in the text of the relevant statutes or in the history of the common law, and its only support for this approach is a non-binding decision from this Court that misreads an inapposite Federal Circuit case and, critically, *granted* a declaratory judgment despite finding the plaintiff there did not meet the requirements for an injunction.

*Second*, GSA asks the Court to close its eyes to *the agency's own reasoning below* by eschewing the *Reilly's Wholesale* framework for evaluating a CICA override decision. If GSA's position were that the very framework it employed D&F is now inappropriate for this Court's review, then the D&F should be declared arbitrary and capricious simply for applying the incorrect

---

[1] Unless otherwise noted, abbreviations have the same meaning as in LSL's Motion ("Mot.").

1

████████████████████████████████████████

legal standard. Nevertheless, as LSL showed in its motion and as GSA fails to meaningfully rebut, the *Reilly's Wholesale* factors individually and collectively show that the D&F was arbitrary and capricious.

*Third*, with or without reference to *Reilly's Wholesale*, the D&F is arbitrary and capricious because GSA ignored factors material to the decision, looked to factors Congress instructed the agency not to consider, and reached conclusions contrary to the facts and inconsistent with "reasoned agency decisionmaking." The Court should therefore declare the stay override unlawful and set it aside.

## ARGUMENT

### I. The Proper Remedy Is A Declaratory Judgment.

**A.** As numerous decisions of this Court confirm,[2] a CICA stay override is properly reviewed under the framework for a declaratory judgment rather than that for an injunction. Judge Wolski's decision in *Supreme Foodservice* explains why that approach is correct, and why it should apply here. Under CICA, a bid protester is entitled to an automatic stay simply by filing a timely protest with GAO. 31 U.S.C. § 3553(d)(2), (4). Critically, unlike stays and injunctions in other contexts, *e.g.*, *ACI Techs., Inc. v. United States*, 162 Fed. Cl. 39, 43 (2022) (reciting standard for stay pending appeal), the protester is not required to show that the traditional equitable factors favor a stay. Requiring a protester to make such a showing in a challenge to an arbitrary and

---

[2] *See, e.g.*, *Technica LLC v. United States*, 142 Fed. Cl. 149 (2019) (Smith, J.); *Intelligent Waves, LLC v. United States*, 137 Fed. Cl. 623 (2018) (Hodges, J.); *AT&T Corp. v. United States*, 133 Fed. Cl. 550 (2017) (Smith, J.); *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369 (2013) (Wolski, J.); *URS Fed. Servs., Inc. v. United States*, 102 Fed. Cl. 674 (2012) (Braden, J.); *PMTech, Inc. v. United States*, 95 Fed. Cl. 330 (2010) (Bush, J.); *E-Mgmt. Consultants, Inc. v. United States*, 84 Fed. Cl. 1 (2008) (Hewitt, J.); *Nortel Gov't Sols., Inc. v. United States*, 84 Fed. Cl. 243 (2008) (Futey, J.); *CIGNA Gov't Servs., LLC v. United States*, 70 Fed. Cl. 100 (2006) (Williams, J.); *Advanced Sys. Dev., Inc. v. United States*, 72 Fed. Cl. 25 (2006) (Baskir, J.); *Automation Techs., Inc. v. United States*, 72 Fed. Cl. 723 (2006) (Horn, J.); *Maden Tech Consulting Inc. v. United States*, 74 Fed. Cl. 786 (2006) (Braden, J.); *Chapman L. Firm Co. v. United States*, 65 Fed. Cl. 422 (2005) (Merow, J.).

capricious stay override would "would convert the CICA stay to something other than what Congress created." *Supreme Foodservice*, 109 Fed. Cl. at 397.

GSA's proposed standard would, in other words, reward and even incentivize agencies to override the CICA stay without a persuasive justification. *See, e.g., Perez v. Ledesma*, 401 U.S. 82, 123 (1971) ("irreparable injury must be shown in a suit for an injunction, but not in an action for declaratory relief."). In a case where the agency has no basis to override the stay but knows the protester will have a difficult time establishing irreparable harm, it could simply issue an arbitrary override and shift the burden to the protester to make an equitable showing that CICA itself does not require.

**B.** In its Opposition Brief, GSA asks the Court to depart from this well-trod approach and to instead "consider[] declaratory relief under the injunctive relief standards." Opp. 27. That approach is inconsistent with the Court's statutory authority to award *either* declaratory or injunctive relief, 28 U.S.C. § 1491(b)(2), and with the very nature of declaratory relief. And requiring a protester to make out a full equitable showing in a stay override challenge would subvert Congress's intent for the reasons explained in *Supreme Foodservice*. 109 Fed. Cl. at 397; *accord, e.g., Chapman L. Firm Co. v. United States*, 65 Fed. Cl. 422, 424 (2005) ("Congress did not require any evaluation of injunctive relief factors as a prerequisite to a stay of contract performance upon the filing of a protest with the GAO. Thus, it would be contrary to the legislative scheme to impose such an additional requirement, upon finding that an agency override determination lacks validity, in order to reinstate the statutory stay applicable during the GAO protest period.").

In support of its neither-fish-nor-fowl remedy, GSA relies (at 27) on *Superior Helicopters v. United States*, 78 Fed. Cl. 181 (2007). But GSA fundamentally misreads *Superior Helicopters*.

In that case, the court *granted a declaratory judgment* despite finding that the equitable factors did not support an injunction:

> In balancing the factors pertinent to equitable relief, the court concludes that plaintiffs are entitled to a declaratory judgment, but not an injunction. Therefore, the Forest Service's override of the automatic stay under 31 U.S.C. § 3553(d)(3)(C) will be set aside and dissolved.

78 Fed. Cl. at 200. Thus, GSA's sole authority *refutes* its argument (at 28) that the Court "must apply the equitable relief standards" before issuing a declaratory judgment.

GSA also relies on *PGBA, LLC v. United States*, which did not involve a CICA stay override but instead a request to "bar [the winning bidder] and the government from going forward with the [contract] as awarded and effectively mandate a new round of solicitation, proposals, evaluations, and a new contract award." 389 F.3d 1219, 1228 (Fed. Cir. 2004). GSA misreads that case as well. The Federal Circuit in *PGBA* concluded that mandatory, coercive relief "was injunctive" rather than declaratory, and therefore applied the standard for an injunction. *Id.* The case said nothing about requiring the same showing of a plaintiff seeking truly declaratory relief—*i.e.*, "merely a declaration of legal status or rights." *Id.* at 1228 n.6. Here, LSL does not seek to compel any action from GSA; it merely seeks the "much milder form of relief" of a declaratory judgment stating that GSA has not validly overridden the CICA stay. *Steffel v. Thompson*, 415 U.S. 452, 471 (1974).

    **C.**     Although the declaratory judgment relief framework is clearly the right standard, this is nevertheless not a case where "the distinction between declaratory relief and injunctive relief might indeed change the outcome of the court's review of a CICA stay override." *PMTech*, 95 Fed. Cl. at 348. As explained previously, Mot. 27–32, LSL is entitled to relief whether the Court applies the standard for declaratory relief or injunctive relief. Therefore, whether the Court

exercises its discretion to enter a declaratory judgment or a permanent injunction, in either event

LSL is entitled to relief from GSA's unlawful override decision.[3]

## II.     The Stay Override Was Arbitrary And Capricious.

### A.     The Court Should Apply the *Reilly's Wholesale* Factors, Just as GSA Did in the First Instance, and Find GSA's Decision Arbitrary and Capricious.

GSA argues that the Court should review the stay override without reference to the *Reilly's Wholesale* factors, *see* Opp. 1 n.1, 16–17, even though those are the factors GSA itself used to justify the override. *See* AR5–11; *Reilly's Wholesale Produce v. United States*, 75 Fed. Cl. 705, 711 (2006). In other words, LSL's arguments are not "couched in terms of the factors identified by this Court in *Reilly's Wholesale*," *contra* Opp. 16, but rather in terms of the factors identified *by GSA*. *See* AR5–10 (section headings and discussion following the *Reilly's Wholesale* factors). As prior decisions from this Court have recognized, when an agency "listed those factors in the D&F, outlining its consideration of each one, … the substantive use of the *Reilly's Wholesale* factors by the Agency itself" makes it "only logical that this Court use this analytical framework as well, consistent with the majority of other CICA override decisions in this Court." *Technica LLC v. United States*, 142 Fed. Cl. 149, 154 (2019).

Indeed, if GSA were correct that the Court should not consider the very factors that the agency invoked to justify the override, then the override is arbitrary and capricious simply for applying the wrong factors. *See, e.g., Intelligent Waves, LLC v. United States*, 137 Fed. Cl. 623,

---

[3] GSA's weighing of the equitable factors assumes that its only choices are to keep the override in place and "exposing the Northeast region to the risk of" being without SNS supplies or overriding the stay and thereby "restoring the Northeast region's ability to respond to emergencies." Opp. 3, 18. As explained previously (Mot. at 20-23) and below (*infra* § II.B), this misweighs the alternatives to a stay override (continued performance by LSL) and the benefits of an override (which will not be realized until long after GAO rules, if at all). As for irreparable harm, GSA misleadingly and baselessly distinguishes case law holding that loss of an opportunity to compete *on a fair and level playing field*, Mot. 31 (italicized portion elided at Opp. 31), and loss of a valuable procedural right is irreparable. GSA's blithe statement that "some of LSL's main concerns have already occurred"—namely, ▮▮▮▮▮▮▮▮▮▮▮▮, which we understand hurriedly occurred immediately after the status conference in this case—only reinforces the need for the Court to re-level the playing field as much and as quickly as it can.

625–26 (2018) (agency action is arbitrary and capricious if it "relied on factors which Congress has not intended it to consider" (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983))); *Chen v. GAO*, 821 F.2d 732, 734 (D.C. Cir. 1987) (agency decision "appl[ying] the wrong standard … would also be arbitrary and capricious and contrary to law").

**B.      The Override Decision Is Arbitrary and Capricious Under APA Case Law Too.**

Under any standard, however, the stay override was arbitrary and capricious because of GSA's conclusion that the only two options were overriding the stay or maintaining the status quo indefinitely. *E.g.*, Opp. 19–20. That conclusion was, in *State Farm* terms, a "fail[ure] to consider an important aspect of the problem," "reli[ance] on factors which Congress has not intended [GSA] to consider," and "an explanation for [the Government's] decision that runs contrary to the evidence before the agency." *Intelligent Waves*, 137 Fed. Cl. at 625–26 (quoting *State Farm*, 463 U.S. at 43). Thus, the D&F was arbitrary and capricious under either standard.

1.      As the record on this motion demonstrates, LSL has made multiple offers to further extend the bridge contract on terms favorable to the government for as long as is necessary to ensure continued performance through the final award of the contract. Cheetham Decl. (ECF No. 1-1) ¶ 8 ("on June 20, 2023, and September 27, 2023, LSL offered SNS to extend the Bridge Contract past January 25, 2024" and to "do everything possible to help SNS avoid interruption in service."); Suppl. Cheetham Decl. ¶¶ 4 & Attachment A. That offer remains open, and could be accepted by GSA at any time. *Id.*.

GSA does not deny the substance of LSL's extension offer, or even that an extension of the Bridge Contract is an "important aspect of the problem" and a "reasonable alternative to the override." Instead, the agency claims to have "no record of any such offer." Opp. 20. This bare attorney argument without any declaration of support carries no weight. But in deciding whether

to override a CICA stay, it is the contracting agency's burden to exhaust all available alternatives. *URS Fed. Servs., Inc. v. United States*, 102 Fed. Cl. 664, 672 ("[E]ven if that official determines that an override is in the 'best interests of the United States' an analysis of the alternatives to the override and costs to the integrity of the procurement system must be conducted."). And in particular, where an existing contract is due to expire while a procurement or protest is ongoing, the preferred approach is to use a bridge contract or a single-source procurement to secure interim performance.[4] GSA cannot claim to have actually considered all available alternatives where it buried its head in the sand to the most effective and legally preferential solution.

In the alternative, GSA asserts that even with an extended or new contract in place, the incumbent LSL facility could not adequately store product. But the facility stored SNS product *less than two weeks ago*. GSA still has not explained—not in the D&F, not in its opposition brief— why the facility that saw the NCR through the COVID-19 pandemic and other public health emergencies, that was operating to meet SNS's needs this month, and that has done all that has been asked of it with ███████████████, Mot. 21–22, suddenly cannot even be considered while GAO resolves the latest protest to GSA's improper awards. In fact, the individuals that signed the D&F have not even visited the facility in five years; if they had, they would have seen a facility fully capable of meeting GSA's needs during the stay. Suppl. Cheetham Decl. ¶¶ 2–10, 12 & Att. B. GSA's bald assertion that LSL cannot provide equal service to an IQS facility months

---

[4] GSA claims (at 21) it would have been too "time-consuming" to enter a new or extended contract prior to January 25. This simply is not true. GSA could have unilaterally exercised the remaining option through January 25, 2024, and could have entered into an additional bridge, as offered by LSL. In all events, this rationale does not appear in the D&F, and therefore may not be considered on review of GSA's decision. *BAE Sys. Norfolk Ship Repair, Inc. v. United States*, 163 Fed. Cl. 217, 227–28 (2022). Likewise, GSA's speculation raised for the first time in its brief that LSL might not have "had enough time left in its lease to support a bridge contract is the type of "post hoc justification" that may not be offered in defense of its decision. *CW Gov't Travel, Inc. v. United States*, 154 Fed. Cl. 721, 747 (2021). Indeed, had GSA merely inquired, it would have learned that LSL is willing to extend the current lease ████████ ████████████████████. Suppl. Cheetham Decl. ¶¶ 4 and Attachment A

7

away from being operational is irrational and ignores critical factors material to the override decision.

2. The D&F was additionally arbitrary and capricious because it relied on factors that Congress did not intend for the Government to consider in a stay override. GSA's analysis of "reasonable alternatives to the override" recited several ways in which the new facility called for by the solicitation will be superior to LSL's incumbent facility: ███████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████. AR7–8; *see also, e.g.*, Opp. 20 (claiming that incumbent facility is not a reasonable alternative because it is "about ████ ████ of what GSA determined would be necessary going forward"). GSA claims, in other words, that the new contract will be an improvement over the current one.

But as numerous decisions from this Court have recognized, "familiarity with the Congressional purpose behind the automatic stay would naturally lead to the identification of factors, such as the new contract being better than what it would replace or its performance being preferred to alternatives, that were implicitly 'factors which Congress has not intended [an agency] to consider.'" *Supreme Foodservice*, 109 Fed. Cl. at 385 (quoting *State Farm*, 463 U.S. at 43); *accord, e.g.*, *PMTech*, 95 Fed. Cl. at 343 n.11; *Reilly's Wholesale*, 75 Fed. Cl. at 711. Because "it will almost always be the expectation that the new contract will be an improvement over the old," "[t]o allow a best interests determination to rest on such a common ground would permit the override exception to swallow the Congressionally mandated rule that stays be automatic." *Advanced Sys. Dev.*, 72 Fed. Cl. at 31.

Thus GSA's observations that the new facility ████████████████████████ ███████████████████████████████████████, AR7–8, are all not only beside the

point (because that facility will not come online until, at the earliest, months after GAO rules) but are additional grounds for holding the override arbitrary and capricious because they are simply projections that "the new contract being better than what it would replace" and that "performance [is] preferr[able] to alternatives." *Supreme Foodservice*, 109 Fed. Cl. at 385. Of course, the new facility LSL has proposed would also offer these advantages over the incumbent contract, and GSA's failure to properly credit that fact is, in part, the subject of LSL's pending GAO protest.

3.     Finally, for all the reasons set forth in the Motion, there is an irreconcilable disconnect between GSA's decision and the facts in the record—*i.e.*, "between the facts found and the choice made," *see State Farm*, 463 U.S. at 43. GSA's stark contrast between no performance and performance by IQS is unsupported on both ends of the ledger—LSL can continue serving the NCR just as it has for the past twelve years if GSA simply agrees, and IQS will in no circumstance have a facility that is even partially operational until after GAO decides the protest.

## CONCLUSION

For the foregoing reasons, the Court should enter a declaratory judgment, or in the alternative a preliminary injunction, reinstating the automatic CICA stay.

Dated: December 20, 2023

Respectfully submitted,

/s/ Jennifer S. Zucker

William R. Levi
Daniel J. Hay
Lucas W.E. Croslow
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8000
Fax: (202) 736-8711
william.levi@sidley.com

Jennifer S. Zucker
 *Counsel of Record*
Christopher M. O'Brien
GREENBERG TRAURIG, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Tel: (202) 331-3114
Fax: (202) 331-3101
zuckerjs@gtlaw.com

*Counsel for Plaintiff Life Science Logistics, LLC*